IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

JIMMY TAYLOR, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO.: CV509-033
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Morton J. Gold, Jr., ("the ALJ" or "ALJ Gold") denying his claim for Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Plaintiff urges the Court to reverse the ALJ's decision and enter an award of benefits in Plaintiff's favor, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts the Commissioner's decision should be affirmed.

Plaintiff protectively filed an application for Disability Insurance Benefits and Supplemental Security Income on June 3, 2003, alleging that he became disabled on June 2, 2000[1], due to back disorders and depression. (Tr. at 377; Pl.'s Br., p. 1). After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On March 4, 2005, ALJ Gold conducted a teleconference hearing at which

---

[1] Plaintiff previously filed an application for benefits on June 29, 2001, alleging that he became disabled on June 2, 2000. This application was denied on March 17, 2003, and the Appeals Council denied his request for review on May 16, 2003. The earliest date ALJ Gold considered Plaintiff's disability claims was March 18, 2003. (Tr. at 21).

Plaintiff, who was represented by counsel, appeared and testified. Dr. Don Harrison, a vocational expert, also appeared and testified at this hearing. ALJ Gold found that Plaintiff was not disabled within the meaning of the Act. (Tr. at 21). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, after considering additional evidence, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 5).

On November 15, 2006, Plaintiff's claims were remanded from the United States District Court for the Middle District of Florida pursuant to sentence four of 42 U.S.C. § 205(g). ALJ Gold conducted a video hearing on January 8, 2008, at which Plaintiff appeared and was represented by counsel. Silvio Reyes, a vocational expert, was also at this hearing. ALJ Gold found that Plaintiff was not disabled within the meaning of the Act during the relevant period[2]. (Tr. at 378). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and it is this decision of the ALJ which became the final decision of the Commissioner for judicial review. (Tr. at 365).

Plaintiff, born on June 17, 1953, was fifty one (54) years old when ALJ Gold issued his decision. He has an eighth grade education. (Tr. at 22). Plaintiff's past relevant work experience includes employment as a millwright, a construction worker, an iron worker, a heavy equipment operator, and a foreman. (Tr. at 385).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged

---

[2] The relevant period was March 18, 2003, until June 30, 2005. Plaintiff was found disabled based on another application on July 1, 2005. The ALJ noted that any discussion of evidence before March 18, 2003, was for clarification of Plaintiff's impairments, not for "onset or entitlement purposes[.]" (Tr. at 378).

2

in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work. Id. If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff had not engaged in substantial gainful activity since March 18, 2003, "the earliest date [Plaintiff] can be considered for disability." (Tr. at 380). At Step Two, the ALJ determined that Plaintiff had mild degenerative disc disease of the spine, moderate

3

degenerative disc disease of the lumbar spine, hernia, and prescription drug abuse, conditions considered "severe" under the Regulations. However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 382). The ALJ found that Plaintiff, between March 18, 2003, until June 30, 2005, had the residual functional capacity to perform a limited range of medium work with the following limitations: no climbing ladders, ropes, or scaffolding; individually sitting, standing, walking, pushing, and/or pulling up to 30 pounds for at least 2½ hours in an eight-hour workday; individually crawling and lifting/carrying 20 pounds occasionally (2½ hours) and 10 pounds frequently (up to 5½ hours); and changing positions for a few minutes every 90 minutes. ALJ Gold also found that Plaintiff's prescription drug abuse might have made him late to work or returning from a scheduled break by up to 15 minutes once or twice a week, but he would have completed his assigned tasks within the same workday. (Id.). At the next step, ALJ Gold noted Plaintiff was unable to perform any of his past relevant work. (Tr. at 385). ALJ Gold found that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could make a successful adjustment to other work and could perform the following jobs which existed in significant numbers in the national economy: labeler, coin machine collector, and garment sorter, all of which are light, unskilled jobs. (Tr. at 386).

## ISSUES PRESENTED

I. Whether an unsupported residual functional capacity assessment can form the basis of an ALJ's decision; and

II. Whether the ALJ properly discredited the Plaintiff's statements.

AO 72A
(Rev. 8/82)

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

**I.  Plaintiff's Residual Functional Capacity**

Plaintiff asserts that the ALJ provided no reasoning to support his conclusions regarding Plaintiff's limitations in the four broad functional areas. Specifically, Plaintiff

5

asserts that ALJ Gold's conclusion that his situational depression caused no limitations in daily living and social functioning and only mild limitations in concentration, persistence, or pace is unsupported by the record. Plaintiff also alleges that Dr. Eaton concluded that Plaintiff's personality disorder rendered his ability to interact with supervisors and to deal with work stresses fair to poor, and his ability to relate to co-workers, deal with the public, behave in an emotionally stable manner, and relate predictably in social situations was poor. Plaintiff asserts that the ALJ erred by rejecting the findings and opinions of Dr. Marc Eaton, an examining psychologist. Plaintiff also asserts that the ALJ wrongly discounted the opinion of Dr. Mubbashir Muzzammil, a treating psychiatrist, because the ALJ claimed Dr. Muzzammil refused to acknowledge that Plaintiff is a prescription drug addict with situational depression. Plaintiff also avers that the ALJ wrongly rejected the physical limitations which Dr. Burt, Plaintiff's "long-time treating physician", found.

Defendant asserts that the ALJ properly rejected Dr. Burt's findings because they were in 2007, outside the relevant period. Defendant contends that the ALJ was correct to discount Dr. Eaton's opinion. Defendant asserts that Dr. Eaton's conclusions were based on a one-time examination which provided only a snapshot view of Plaintiff's mental condition, and his opinion was inconsistent with substantial evidence of record concerning the relevant time period. Defendant alleges that ALJ Gold properly rejected Dr. Muzzammil's opinion regarding Plaintiff's limitations because Dr. Muzzammil's opinion was rendered several years after the relevant period and was inconsistent with substantial evidence from the relevant time period.

The law in this circuit is well established that the ALJ must accord the opinions of the treating physicians substantial or considerable weight. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Absent a showing of good cause to the contrary, the ALJ cannot discount the treating physicians' opinions. Id. "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004).

ALJ Gold noted that the medical evidence of record shows that Plaintiff's complaints of and conservative treatment for back pain radiating to the right lower extremity following a 1999 injury "and a history of polysubstance narcotics dependence with detoxification" was stopped in October 2000 against medical advice. (Tr. at 380). ALJ Gold also noted that an MRI post myelogram and post myelogram CT scan of the lumbar spine "showed essentially some mild degenerative disc disease" and some mild spinal stenosis. (Id.). Plaintiff was referred to a spinal specialist, who opined that Plaintiff could lift/carry 30 pounds and was restricted from constant bending or twisting. The ALJ stated that Plaintiff had two (2) series of epidural injections, and he reported improvement lasting three (3) months. ALJ Gold noted that Plaintiff had a consultative evaluation on January 2, 2003, and he reported that he was taking ibuprofen for "discomfort." (Id.). During examination, ALJ Gold noted, Plaintiff's range of motion of the lumbar spine was within normal limits, his straight leg raising was normal, and he had no neurological deficits. The ALJ stated that May 13 and August 25, 2003, emergency room/outpatient notes reflect chronic complaints, including low back and

7

foot pain, a prior diagnosis of heel and hand spurring, a medical history of narcotics abuse, and "apparent drug-seeking behavior[.]" (Id.). ALJ Gold noted that Plaintiff's May 2003 examination of his back revealed a vague, non-specific discomfort to the lower back; the examination was normal bilaterally, and he had tenderness to the left heel but no swelling, erythema, or heat. The August 2003 report, the ALJ states, reflected that neurological examination was non-focal with good motor strength throughout, and Plaintiff's gait was within normal limits. ALJ Gold noted that Dr. Stephen Burt's treatment records from February 2004 through January 2005 "reflect [Plaintiff's] complaints of back pain, bilateral foot pain, symptoms associated with a large ventral abdominal hernia, and [a] prescription for Viagra." (Tr. at 381). ALJ Gold noted that Plaintiff's complaints of a right heel spur in May 2003 and one time complaints and evaluation for a bruise to the left foot after dropping a 25 pound weight on it were non-severe impairments of insufficient duration to be considered disabling under the Act.

ALJ Gold also noted that Plaintiff told Coffee Mental Health personnel that: his attorney advised him to seek mental health treatment so that he could get disability payments like she got for his wife the last several years before her death, he had been denied disability three (3) times in the past, and he could live with his mother in Florida if he was denied again. ALJ Gold also noted that, when Plaintiff was seen on June 18, 2004, he was depressed because he was unemployed and because he had lost his wife. On July 1, 2004, it was noted that Plaintiff was taking his medications more frequently than prescribed. (Tr. at 225, 381). The ALJ observed that, on seven (7) separate occasions in a three (3) month period, Plaintiff reported to medical personnel that his medications had been stolen—either by someone who broke into his house, his

8

girlfriend's children, or an acquaintance—or that his girlfriend took his medications with her when she left; on at least one of these occasions, Plaintiff requested additional medications. However, despite Plaintiff's claim that his medications were being stolen, ALJ Gold stated that Plaintiff's mental status examination was normal, "with no significant changes in mental status since his last contact[.]" (Tr. at 381). Plaintiff also reported on January 7, 2005, that he had run out of Lortab and Flexiril and was unable to see his primary doctor that day. ALJ Gold determined that Plaintiff's medically determinable mental impairment of situational depression secondary to his wife's death did not cause more than minimal limitations on his ability to perform basic mental work activities for any consecutive twelve-month period during the relevant period, thus making his depression non-severe. In making this determination, the ALJ stated he considered the four (4) functional areas of Listing 12.00C—activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. The ALJ found that Plaintiff had mild limitations in the area of concentration, persistence, or pace, and no limitations in the other three areas regarding his situational depression. In addition, the ALJ found that Plaintiff's prescription drug abuse "was severe in that it would result in more than mild difficulties in maintaining social functioning and concentration, [persistence,] or pace. Otherwise, it caused no limitation in activities of daily living and no episodes of decompensation." (Tr. at 382).

ALJ Gold gave no evidentiary value to the treating mental health source opinion (Dr. Muzzammil), as he found that the mental health center refused to acknowledge and note that Plaintiff is a prescription drug addict and that his depression is situational,

unlike "all other treating and examining sources[.]" (Tr. at 384; see also, Tr. at 328). The ALJ discounted Dr. Marc Eaton's opinion from the January 2002 consultative psychological evaluation because the ALJ found that Dr. Eaton's "snapshot summary" of Plaintiff's medical condition was not supported by or consistent with other medical or psychological evidence of record covering the relevant period. (Id.). The ALJ also gave no evidentiary value to medical records and mental and physical residual functional capacity assessments which were submitted at the January 8, 2008, hearing because they addressed Plaintiff's capacity outside of March 18, 2003, through June 30, 2005. Further, the ALJ did not give any evidentiary weight to a letter dated August 2, 2005, from a county literacy coordinator at the public library because the letter was not from an accepted medical source or an accurate assessment given Plaintiff's history of malingering on testing and was inconsistent with Plaintiff's past relevant work in which he demonstrated the ability to read and decipher blueprints. In contrast, ALJ Gold gave great weight to the opinions of the State Agency medical consultants, as he found they were based on a review of Plaintiff's medical treatment records and objective findings of examinations and the resulting opinions of the examining consultative physician. Finally, ALJ Gold stated that he gave Plaintiff's subjective complaints "the greatest benefit of the doubt and due consideration to [Plaintiff's] need to alternate positions for a few minutes every 1½ hours, as assessed by the consultative physician, and the impact of his history of polysubstance addiction on his ability to sustain work-related activities[ ]" in determining Plaintiff's physical and mental residual functional capacity. (Tr. at 384-85).

AO 72A
(Rev. 8/82)

ALJ Gold gave explicit reasons for discounting the opinions of Plaintiff's treating physicians and mental health provider, which are sufficient to meet the good cause standard. It appears Plaintiff wishes this Court to re-weigh the evidence of record. This is not an appropriate course for any court reviewing a claim for Social Security benefits. The undersigned notes that ALJ Gold found Plaintiff could push or pull 30 pounds, which, while inconsistent with medical evidence from the relevant period, is a harmless error. ALJ Gold determined that the jobs Plaintiff could perform were at the light exertional level, not the medium exertional level. The ALJ's determinations of Plaintiff's physical and mental residual functional capacities are supported by substantial evidence. Plaintiff's assertions to the contrary are without merit.

## II. Plaintiff's Credibility

Plaintiff contends that the ALJ relied on evidence not in the record and ignored his diagnosis of a pain syndrome to discredit his statements. Plaintiff asserts that ALJ Gold claims that he misrepresented his educational level based on his June 3, 2003, application in which he stated he was in special education classes, but not in his previous applications; however, Plaintiff asserts, none of his previous applications are in the record, so it is impossible to verify ALJ Gold's claim. Plaintiff contends that there are not any inconsistencies in the record, as he testified at the 2005 hearing that he was in full-time special education classes, he told Dr. Eaton in 2002 that he was placed in classes for "underachievers[ ]", and the available school records show that he was failing every class. (Doc. No. 12, p. 24). Plaintiff also contends that the ALJ noted that, in a prior decision, Plaintiff failed a functional capacity assessment due to malingering while undergoing testing, but neither the prior decision nor the assessment are included

in the record.  Plaintiff asserts that the ALJ cannot rely upon evidence outside of the record, as he was directed to affirm, modify, or reverse a prior adverse administrative decision on the basis of evidence adduced at the hearing.  Plaintiff also asserts that "the Act does not contemplate that the adjudicator will take administrative notice of evidence not part of the record in the current case." (Id. at p. 25).  According to Plaintiff, to deny his claim without providing him the opportunity to verify or expose potential errors or misconceptions violates his right to due process.  Plaintiff alleges that the ALJ discounts his symptoms as not being supported by evidence, but ignored the agency consultant's diagnosis of a pain disorder associated with psychological factors and a general medical condition.  Plaintiff states that the ALJ's failure to articulate adequate reasons for discrediting his testimony requires that the testimony, as a matter of law, be accepted as true.

Defendant asserts that the ALJ gave valid reasons for discounting Plaintiff's credibility, including the objective medical evidence, as well as evidence of Plaintiff's drug seeking behavior and problems with a prescription drug addiction.  Defendant also asserts that there is inconsistent evidence in the record about Plaintiff's education level and literacy.  Specifically, Defendant asserts that Plaintiff did not contest at the hearing that he failed to assert in a previous application that he took special education classes, and he testified that he could not spell or write and had limited reading skills.  Defendant contends that, in this application, Plaintiff stated he could read English and write more than his name in English.  Defendant also contends that Plaintiff had to read blueprints in one of his past jobs, and much of his past work was performed at the semi-skilled to skilled level and required literacy skills.  Defendant further contends that Dr. Eaton's

AO 72A
(Rev. 8/82)

testing revealed that Plaintiff's reading skills were only slightly below average. Defendant alleges that, even though ALJ Gold improperly considered "extra-record" evidence regarding a finding of malingering in a previous decision, this error was harmless in light of ALJ Gold providing other valid reasons to support his credibility determination. (Doc. No. 13, p. 24). Defendant also alleges that the ALJ was not required to find Plaintiff's subjective allegations of a pain disorder credible.

Plaintiff avers that it is impossible to determine how much weight the ALJ placed upon the extra-record evidence, and it is therefore impossible to conclude that this error was harmless. Plaintiff contends that he answered the question regarding special education classes ALJ Gold posed. Plaintiff also contends that the ALJ ignored Dr. Eaton's diagnosis, which supported his subjective complaints of pain.

If a plaintiff "testifies as to his subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir.1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." Id. (internal citation omitted). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210-11 (quoting Foote, 67 F.3d at 1561).

ALJ Gold found Plaintiff's medically determinable impairments "could reasonably be expected to produce some of the alleged symptoms[,]" after he considered the

AO 72A
(Rev. 8/82)

evidence of record. (Tr. at 384). ALJ Gold observed that Plaintiff's statements concerning the intensity, persistence, and limiting effects of this symptoms during the relevant period were not "entirely credible as they are not supported by objective medical evidence." (Id.). The ALJ found that Plaintiff's credibility was further "diminished by the fact that he repeatedly lied regarding theft of medications to enable him to obtain more than that prescribed." (Id.). The ALJ stated that Plaintiff misrepresented his educational level—regular versus special education classes—from one application to another. Specifically, ALJ Gold noted that Plaintiff claimed in his June 2003 application that he was in special education classes, but he did not make this claim in his previous application. ALJ Gold also noted that Plaintiff claimed he was marginally-to-functionally illiterate, and that he misrepresented his ability to read given that his past relevant work required that he read blueprints and work on hydraulics and that he worked and repaired engines in the National Guard in the 1970s.

The ALJ gave adequate and explicit reasons for finding Plaintiff less than fully credible. Thus, the ALJ was not required to give credence to Plaintiff's alleged pain syndrome. Plaintiff's assertions to the contrary are without merit.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

**SO REPORTED** and **RECOMMENDED**, this 13th day of May, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)